UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60100-CR-RNS(s)

UNITED STATES OF AMERICA

v.

DOMINIC RIGANOTTI,

   Defendant.
_____/

## STIPULATED FACTUAL PROFFER

   If this matter were to proceed to trial, the Government would prove the following facts beyond a reasonable doubt.  The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, DOMINIC RIGANOTTI, are sufficient to prove the guilt of the Defendant of the Superseding Information charging a violation of Title 18, United States Code, Section 371, and Title 21, United States Code, Section 841.

   Through on-going investigation, the Drug Enforcement Administration ("DEA") learned RIGANOTTI had been prescribing an unusually large amount of testosterone and Schedule II narcotics and was possibly involved in some type of healthcare fraud.  Beginning in September 2016, DEA utilized a confidential source (CS) to make appointments with RIGANOTTI's medical office located in Wilton Manors, Florida in order to investigate the full operation.  During those visits, the CS obtained prescriptions for Schedule II and III drugs without a medical examination.

   As to Count Two of the Information, on November 15, 2016, the CS entered RIGANOTTI's medical office.  The CS was audio and video recorded by two separate surreptitious recording devices at all times within the medical office.  During this visit, the CS asked RIGANOTTI for a prescription for Percocet, which contains a detectable amount of the

Schedule II controlled substance oxycodone. RIGANOTTI did not conduct a medical examination of the CS or ask the CS any questions in order to ascertain the medical necessity for the Percocet prescription. After a brief casual conversation, RIGANOTTI gave the prescription for Percocet to the CS and ended the visit.

After executing a search warrant on January 11, 2017, at RIGANOTTI's medical office, law enforcement officers read RIGANOTTI his Miranda rights, and RIGANOTTI knowingly and voluntarily agreed to speak with them. During that conversation, RIGANOTTI confessed to writing prescriptions for a variety of scheduled drugs for patients at times with no physical exam, no blood work, and no taking of blood pressure. RIGANOTTI admitted he knew that prescribing these drugs without a physical examination was illegal. He said he did it because he needed the money.

## Health-care Fraud

The elements necessary to prove a health-care fraud conspiracy pursuant to Title 18, United States Code, Section 371, are the following:

(1)     the Defendant knowingly executed, or attempted to execute, a scheme or artifice to defraud a health-care benefit program, [or to obtain money or property owned by, or under the custody or control of, a health-care benefit program] by means of false or fraudulent pretenses, representations, or promises;

(2)     the false or fraudulent pretenses, representations, or promises related to a material fact;

(3)     the Defendant acted willfully and intended to defraud; and

(4)     the Defendant did so in connection with the delivery of or payment for health-care benefits, items, or services.

## Health-care Investigation

As a result of that operation, the Department of Defense OIG and Health and Human Services began an investigation into RIGANOTTI having unusually high billings to Medicare and

Tricare.  RIGANOTTI admitted that the unusually high-billings' to Medicare and Tricare were related to a kickback scheme with an individual working at his office (Coconspirator 1).  According to RIGANOTTI, Coconspirator 1 had an existing relationship with a pharmacy and worked out a scheme where RIGANOTTI and Coconspirator 1would push patients to fill the prescriptions with that pharmacy.  RIGANOTTI told law enforcement that Coconspirator 1 worked in his office as the office manager for approximately two years.  Coconspirator 1 would schedule appointments for patients, handle prescriptions, and pay the rent.  RIGANOTTI admitted that the payment of this rent was the kickback payment for prescriptions to this pharmacy.  One of Coconspirator 1's key functions was to funnel the prescriptions from RIGANOTTI's practice to the pharmacy.  As part of the conspiracy, Coconspirator 1 would receive financial compensation from the pharmacy for each prescription sent.  Coconspirator 1 would then pay the kickback to RIGANOTTI.  One method Coconspirator 1 used to conceal the kickback payments to RIGANOTTI was to use the cash to pay the rent for RIGANOTTI's medical practice.  These payments are identified in the Superseding Information as overt acts, and RIGONATTI admits that each payment identified in the Superseding Information was a kickback payment for prescriptions.  These prescriptions were written to defraud both Medicare and TriCare.

RIGANOTTI also reported that Coconspirator 1 and an employee at the pharmacy would regularly give RIGANOTTI large envelopes of cash that were the kickbacks from using the pharmacy  to fill prescriptions.  RIGANOTTI stated that these envelopes were approximately $2,000-$4,000 a month and continued for 2 years.  RIGANOTTI wrote 11 prescriptions for TriCare patients that were fulfilled by Post-Haste.  RIGANOTTI wrote 1,892 Medicare prescriptions.  This was done with intent to defraud these health-care fraud benefit programs.

These acts occurred in Miami-Dade County, in the Southern District of Florida.

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

Date: 1/30/18

By: _____
ELIJAH A. LEVITT
MICHAEL B. NADLER
ASSISTANT UNITED STATES ATTORNEYS

Date: 1/30/18

By: _____
HOWARD SCHUMACHER
ATTORNEY FOR DEFENDANT

Date: 1/30/18

By: _____
DOMINIC RIGANOTTI
DEFENDANT